**IN THE UNITED STATES COURT OF APPEALS**

**FOR THE FIFTH CIRCUIT**

_____

No. 95-30302
Summary Calendar
_____


HERBERT H. WILLIAMS,

Petitioner-Appellant,


VERSUS

BURL CAIN,
Acting Warden, Louisiana State Penitentiary,
and
RICHARD IEYOUB,
Attorney General, State of Louisiana,


Respondents-Appellees.


_____

Appeal from the United States District Court
for the Eastern District of Louisiana
(93 CV 4078)
_____

August 10, 1995

Before KING, SMITH, and BENAVIDES, Circuit Judges.

PER CURIAM:[*]


Claiming that exculpatory evidence was withheld in violation
of <u>Brady v. Maryland</u>, 373 U.S. 83 (1963), Herbert Williams appeals
the denial of his state prisoner's petition for writ of habeas

---

[*] Local Rule 47.5.1 provides: "The publication of opinions that have no precedential value and merely decide particular cases on the basis of well-settled principles of law imposes needless expense on the public and burdens on the legal profession." Pursuant to that rule, the court has determined that this opinion should not be published.

corpus filed pursuant to 28 U.S.C. § 2254.  Finding no error, we affirm.

## I.

Glenn Bates testified that he and his brother, Timothy Lewis, were walking through the Iberville housing project in New Orleans on their way to the movies around 8 p.m. on December 5, 1985, when they noticed a group of people selling drugs.  The lighting in the area was fair, and Bates was able to see the faces of the men in the group.  Bates and Lewis declined the group's solicitation to purchase drugs.

As Bates and Lewis neared Bienville Street, the drug sellers pulled guns.  The group approached Bates and Lewis.  Bates believed there were four or five men in the group, and he was able to see four or five faces.  The men robbed Bates and Lewis.  Bates got a good look at the robbers and identified Herbert Williams as one of them.  Bates identified a blue-hooded jacket as worn by Williams.

Bates testified that officers of the New Orleans Police Department ("NOPD") came to his residence on December 16 and showed him three groups of photographs and specifically identified one photograph from the second group and one from the third group as photos of one of his robbers.  Bates had no doubts regarding the photo in the second group.

On cross-examination, Bates testified that he saw the face of the man in the photos during the robbery.  He had never seen the man before then.  He was sure, when viewing the photographs, that

2

the man he identified was the man who had robbed him.

Bates testified that the man in the photos had worn the blue-hooded jacket during the robbery. Bates was unable to describe the man to the police immediately after the robbery, beyond describing him as wearing a blue jacket. Bates identified the photographs on December 16 without prompting by the police, however.

NOPD Detective Dwight Deal testified that he presented the photographic line-up to Bates and Lewis. According to Deal, Bates selected a photograph of Williams. Deal obtained arrest warrants for the suspects Bates and Lewis identified. Williams was arrested in the Iberville project on December 22. Williams was wearing the blue-hooded jacket when he was arrested.

Deal testified that he notified William of his Miranda rights orally and in writing. According to Deal, Williams acknowledged that he understood those rights. He signed the written form informing him of his rights. According to Deal, neither he nor his partner coerced Williams or made any promises to induce Williams to sign the form.

Deal testified that Williams orally confessed his involvement in the robbery. He identified three other individuals as his partners in crime, including two individuals identified in the photographic line-up. He also named a fourth individual, Leon Johnson. Williams helped the police find Johnson, then Williams and Johnson helped the police find Leroy Crosby, who resided in the Calliope housing project. The police took Williams, Johnson, and Crosby to a downtown police station.

3

According to Deal, Williams dictated a written confession to him there. Officer Emelda Tony Blanco typed the confession as Williams spoke. Deal testified that the form on which the confession was typed carried another written Miranda warning. According to Deal, Williams signed all three pages of the written confession. Williams understood his rights and waived them. Deal did not coerce Williams. Nor did he promise Williams anything to obtain the written confession. On cross-examination, Deal testified that Bates identified Williams without hesitation but that Lewis did not.

The state trial court read Williams's confession to the jury. In addition to admitting his participation in the December robbery, Williams stated that he had needed $200-300 per day to sustain his heroin habit. In response to a question regarding whether he was coerced or threatened into making his statement, Williams stated that he was making the statement of his own free will. Williams signed the statement.

Lewis testified that he and Bates were robbed in the Iberville project on December 5, while on their way to the movies. Four or five men with guns approached Lewis and Bates. Lewis threw his wallet onto the ground. Lewis testified that he got a good look at only two of the robbers.

Lewis ran to the police station and reported the robbery but did not name Williams as a suspect. He identified two photos in the first two sets of photos on December 16 and no photos in the third set.

4

Blanco testified that she typed Williams's confession. According to Blanco, Williams understood his rights. Nobody coerced Williams or made promises to him to obtain the statement.

NOPD Detective Tyrrone Martin testified that he and Detective Woolfork arrested Williams in the Iberville project on December 22. Williams was wearing the blue-hooded sweatshirt, blue jeans, and white tennis shoes. According to Martin, the police had been told that Williams always wore those items of clothing.

Martin testified that Deal informed Williams of his rights. Williams indicated that he understood those rights. According to Martin, nobody threatened, intimidated, or coerced Williams into making a statement. Nobody promised Williams anything or used physical force against him. Martin was able to hear part of Williams's confession. According to Martin, Deal again advised Williams of his rights before Williams gave his written confession.

Williams testified that he was arrested on December 22. The arresting officer did not inform him of the charges against him but merely asked him his name and threw him into a police car. Williams did not recall having been informed of his Miranda rights. He denied that he orally confessed to Deal. He signed the written confession only because Deal placed a gun to his head. He signed the confession without looking at the words on the page.

According to Williams, he was watching television at his sister's residence on December 5. He remembered being there because he missed dollar day at the movies that evening. He arrived at his sister's residence for the evening at around 7 p.m.

5

and did not leave until around 10 p.m.

On cross-examination, Williams testified that he did not live in the Iberville project. He identified the blue shirt as his. He testified that Martin beat him in the car on the way to the police station. Deal beat Williams at the station. Blanco was somewhat more sympathetic to Williams than the other officers and told him not to worry about what the other officers were saying. Before trial, Williams did not inform his attorney or the sheriff's department about police mistreatment. Williams testified that he was a heroin addict and that the $200-300 figure listed in the written confession might have been an accurate, though lucky, estimate by the police. According to Williams, he did not obtain the funds for his habit from robbery.

Joann Williams testified that she was Williams's oldest sister. According to Joann, Williams lived with her in the Iberville project in December 1985. Joann remembered December 5 because her birthday was December 6. Williams was in Joann's residence on the evening of December 5. He had been at the house all day and did not leave unless it was later at night. Joann was downstairs cooking food on the evening of December 5 and would have known if Williams had left.

On cross-examination, Joann testified that it never occurred to her to go to NOPD or the district attorney to protest Williams's innocence. Joann stated, "[h]e had so many charges against him, not just this here." Joann testified that she probably saw Williams ten times during the course of a sixteen-hour day on

December 5.

Kim Williams testified that she and Williams lived with Joann in the Iberville project on December 5. According to Jim, Williams was in the living room of the residence listening to music. Kim did not remember what she was doing.

Deal testified in rebuttal that NOPD did not abuse Williams physically. According to Deal, the sheriff will not accept injured prisoners.

II.

Williams was convicted of armed robbery and attempted robbery. His conviction was affirmed. State v. Williams, 541 So. 2d 401, 402 (La. App. 4th Cir. 1989), writ denied, 564 So. 2d 320 (1990).

Williams filed what the district court construed as a habeas corpus petition, seeking only a copy of a state-court transcript. The district court denied Williams relief. This court dismissed Williams's appeal and noted that his petition should have been viewed as a mandamus petition. Williams v. Whitley, No. 93-3610, slip op. at 1-2 (5th Cir. Mar. 23, 1993) (unpublished).

Williams filed a federal petition for habeas relief, alleging that the state had withheld the initial police report about the December 5 robbery. Williams contended that the police report could have been used to impeach Bates's testimony and that the police report could have been used to find witnesses favorable to him. Williams also argued that the photographic lineup was impermissibly suggestive.

7

The state conceded that Williams had exhausted state-law remedies. The district court dismissed the petition as an abuse of the writ. We vacated the dismissal and remanded, holding that the district court erred by dismissing Williams's petition as abusive because his first petition sought mandamus and not habeas relief.

The magistrate judge recommended that the district court deny habeas relief. The district court adopted the recommendation, then granted Williams a certificate of probable cause to appeal.

III.

Williams avers that the state improperly withheld the police report.[1] He argues that the report would have shown that another individual was wearing the blue-hooded sweatshirt on December 5 and that he was not at a residence with three other suspects. He contends that the report would have shown that Bates and Lewis had failed to identify the robbers initially because it was dark outside. He argues that the report would have contradicted Bates's testimony regarding the number of robbers.

Williams contends that the police report should be considered in the light of police testimony at his preliminary hearing that Bates and Lewis had failed to identify the robbers initially because of fear. He also contends that Lewis's testimony at Johnson's trial indicated that he was not the person wearing the blue-hooded sweatshirt. Williams does not allege that the report

---

[1] Williams abandons his contention that the photographic line-ups were impermissibly suggestive.

8

might have led him to any witnesses favorable to him.

Brady requires disclosure of exculpatory evidence that is material to guilt or punishment. 373 U.S. at 87. "In order to state a Brady violation, [the petitioner] must show that (1) the prosecution suppressed evidence that was (2) favorable to the accused and (3) `material to either guilt or punishment.'" Cordova v. Collins, 953 F.2d 167, 171 (5th Cir.) (quoting Brady, 373 U.S. at 87), cert. denied, 502 U.S. 1067 (1992). "[E]vidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." United States v. Bagley, 473 U.S. 667, 682 (1985).

The police report does not indicate that Bates or Lewis adopted or ratified the report, nor did Bates or Lewis testify that he had done so. "`If a witness has not made as his own the investigator's summary, it is unfair for the defense to use the language or interpretations of someone else for impeachment.'" White v. Whitley, No. 92-3939, slip op. at 4 (5th Cir. Apr. 22, 1994) (unpublished) (citations omitted). Williams therefore could not have used the report to impeach Bates or Lewis.

Moreover, it is unlikely that the report would have made any difference in the case, even had Williams possessed it. Bates testified that he had been unable to describe the robbers to the police initially. The jury therefore had before it evidence that Bates had not identified Williams on December 5. Deal, however, testified that Bates identified Williams's photograph without

9

hesitation on December 16.  Additionally, Williams confessed to the crime.  Williams's explanation of the circumstances surrounding that confession was rendered less than credible by his testimony that he had informed neither his attorney nor the sheriff of his mistreatment by NOPD.  Additionally, Williams and Joann Williams provided contradictory testimony regarding Williams's residence and the amount of time Williams spent at Joann's residence on December 5.  It is unlikely that the information in the report could have overcome the effect of Williams's confession and his own less-than-credible evidence.

In his district court pleading, Williams did not raise his contention regarding Lewis's testimony at Johnson's trial.  We need not consider issues not considered by the district court.  "[I]ssues raised for the first time on appeal are not reviewable by this court unless they involve purely legal questions and failure to consider them would result in manifest injustice."  Varnado v. Lynaugh, 920 F.2d 320, 321 (5th Cir. 1991).  Lewis's testimony at Johnson's trial does not involve a purely legal question.

AFFIRMED.